*McCay,- Judge.
We do not think the testimony of Maxwell of much moment either way. The only objection to it is to its relevancy, and we are free to say that the case, with or without it, would, in our judgment, be about the same. Still, we cannot say it was irrelevant. It went to show, at least, that the deceased was in the habit of referring to his brother, that papers were sometimes pushed upon him by his brother, and that relations did exist between them calculated to cast suspicion upon a deed in the brother’s handwriting for the benefit of his own children.
The great question at last in this case is on the evidence. Whether the charge was right, depends upon whether there was eyidence of the insanity of the maker of the deed to Abel Lemon’s children at the time it was made, and if this evidence does exist, it was not an abuse of the discretion of the Judge to refuse a new trial.
The old common law rule that a man cannot stultify himself, *240 like many other of the dogmatic, fanciful rules that seem to have been adopted in the early history of the common law, on certain abstract logical reasonings, has given way to a large extent in Courts of equity even in England, and is cut up by the roots in our Revised Code, séctions 2693, 2694, 2695. It is in this State simply a question of fact, with no logical obstruction to meet. Was the maker of the deed in such a condition of mind as rendered him incapable of making the deed ? It must be remembered that there was no consideration passed, and there is not, therefore, the technical difficulty of his having taken and kept the money or property of the grantee.
The deed was purely voluntary. It must be remembered, too, that this was not a will; for, in order to secure to a man the care and attention of those dependent upon him in his last days, the law keeps in his power the right to make a will, even when his capacity is less than would invalidate any contract or deed of gift he might make, to take effect immediately. *In looking closely into this testimony, we are not able to say that the evidence of the sanity of the maker of this deed is such as to show an abuse of discretion in the Judge in his refusal to set aside the verdict. We think there is a good deal of evidence to support the charge and the verdict. The man who would exhibit himself in the streets, as did this distressed and afflicted old man, who would make the night hideous with his cries, certainly presented some evidences of insanity. His determination to make a deed instead of a will, to cut down behind him the means of retreat, the consciousness thus displayed, that when his fury passed, other counsels might, and probably would, prevail, is itself an element of unsoundness of mind. How different from the counsel of the sage, to hold your hand when anger is upon you !
That this daughter had done wrong, had outraged her father’s affection, and that it was but just to punish her, dees not, as it seems to us, help the case. The very enormity of her offense, acting upon the peculiar temperament of this excitable old man, only makes it the more probable that it had, for the time, unhinged the intellect. Indeed, as the great dramatist of nature has shown, there is nothing so well calculated to run a man mad as the ungrateful conduct of a thankless child.
We feel with this jury that, a deed obtained under the circumstances, is not entitled to be treated as the free-will act of a sane man. Eor three or four days after his daughter left, it is plain he was wild with mortification, vexation, anger and grief. His mind was full of strange fancies, it was distempered, disturbed, distracted, and ready at times even to commit murder in its vagaries. And we do not think this is met by the proof that at the moment of this signing — this carrying into effect — of the mad fancies flashing through his disturbed and distracted mind - — he was calm in appearance. The act itself, and his statement then, that he wanted a deed and not a will, show that it was only on the surface that the calm existed, and that the full tide of dis *241 tempered, insane rage and fury was still surging beneath. *Perhaps the language of the Judge in his charge is not strictly applicable to the facts: Technical insanity can,, perhaps, hardly be predicated of the condition of the mind of old Mr. Demon. But that state of mind which makes a man’s contracts void — whether it be insanity, distress, delusion, weakness, distempered fancy, or what not — can, we think, be fairly inferred. The act was the-act of a man not fairly at himself, not capable of dealing with the brother at his elbow, ready to put into the mouths of his own children the bounty his distracted brother, in his madness and fury, was casting away.
We will not disturb this verdict. The jury — the twelve neighbors of Mr. Abel Demon and his children — have, on their oaths, declared that the evidence satisfied them this old man was, at the making of the deed, not in a condition to make a contract, and we think there is evidence enough in the record to justify them in this declaration.
Judgment affirmed.